UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
_____

N<sup>os</sup> 15-cv-7187 (JFB) (ARL), 16-CV-3210 (JFB) (AKT),
17-cv-279 (JFB) (GRB)
_____

CYNTHIA WHITE,

Plaintiff,

VERSUS

PROFESSIONAL CLAIMS BUREAU, INC.,

Defendant.

MATTHEW SHIELDS,

Plaintiff,

VERSUS

PROFESSIONAL CLAIMS BUREAU, INC.,

Defendant.

JOSEPHINE GRACCI AND BERNABE L. ANDRES,

Plaintiffs,

VERSUS

PROFESSIONAL CLAIMS BUREAU, INC.,

Defendant.
_____

**MEMORANDUM AND ORDER**
February 22, 2018
_____

JOSEPH F. BIANCO, District Judge:

Plaintiffs Cynthia White ("White"), Matthew Shields ("Shields"), Josephine Gracci ("Gracci"), and Bernabe L. Andres ("Andres," and collectively, "plaintiffs") filed complaints against Professional Claims Bureau, Inc. ("Professional Claims Bureau"

or "PCB" or "defendant"), alleging violations of 15 U.S.C. §§ 1692g(a)(2) and 1692e of the Fair Debt Collection Practices Act (the "FDCPA") in Claims One and Two, respectively, of their complaints. Presently before the Court are plaintiffs' motions for summary judgment pursuant to Federal Rule of Civil Procedure 56. As plaintiffs' claims and grounds for moving for summary judgment are identical in plaintiffs' three separate cases,[1] the Court decides plaintiffs' motions together in this opinion.

Plaintiffs notified the Court of two recent decisions in this district in which the courts granted summary judgment in favor of other plaintiffs against Professional Claims Bureau, finding the same Professional Claims Bureau form letters at issue in this case to be in violation of §§ 1692g(a)(2) and 1692e of the FDCPA. In addition to putting forth arguments for summary judgment on the merits of their cases, plaintiffs argue that, in light of these prior adverse rulings against defendant, this Court should find defendant collaterally estopped from relitigating these issues and rule in favor of plaintiffs.

For the reasons set forth in detail below, the Court grants plaintiffs' motions for summary judgment. Specifically, the Court concludes that defendant is collaterally estopped from relitigating these issues and, in in any event, also independently holds that the letters at issue violate §§ 1692g(a)(2) and 1692e of the FDCPA.

I. BACKGROUND

A. Factual Background[2]

The Court takes the following facts from the parties' joint Rule 56.1 Statements of Facts[3] and any admissible affidavits, depositions, and exhibits. The Court construes the facts in the light most favorable to defendant, the nonmoving party. *See Capobianco v. City of New York*, 422 F.3d 47, 50 n.1 (2d Cir. 2005).

1. Defendant's Collection Letters to Plaintiffs

Plaintiffs are "consumers" and defendant is a "debt collector," as defined by the FDCPA. (ECF No. 17 at 1.) Defendant sent plaintiffs collection letters "in an effort to collect an alleged debt." (*Id.* (discussing defendant's letter to White, dated March 12, 2015); *Shields*, ECF No. 23 at 1 (discussing defendant's letter to Shields, dated September 8, 2015); *Gracci*, ECF No. 17 at 1

---

[1] White brought her claims in *White v. Professional Claims Bureau, Inc.*, No. 15-cv-7187(JFB)(ARL) (E.D.N.Y. Dec. 17, 2015), ECF No. 1; Shields brought his claims in *Shields v. Professional Claims Bureau, Inc.*, No. 16-cv-3210(JFB)(AKT) (E.D.N.Y. June 17, 2016), ECF No. 1; and Gracci and Andres brought their claims in *Gracci v. Professional Claims Bureau, Inc.*, No. 17-cv-279(JFB)(GRB) (E.D.N.Y. Jan. 18, 2017), ECF No. 1. The parties' submissions in each of these cases are identical in all but the plaintiff's and medical provider's names listed on the form collection notice specific to that case, and the sections of the parties' submissions referencing these recipient-specific facts. As discussed *infra*, the rest of the text in these form collection notices and the parties' arguments relating to these forms can be discussed without differentiation.

[2] The Court cites to the record in *White v. Professional Claims Bureau, Inc.*, 15-cv-7187(JFB)(ARL), unless otherwise indicated. The parties filed the same documents in each of the three cases, with minor differences as discussed *supra* in note 1.

References to the record in *White* will be cited as "ECF No. [docket number]." References to the record in *Shields* will be cited as "*Shields*, ECF No. [docket number]." References to the record in *Gracci* will be cited as "*Gracci*, ECF No. [docket number]."

[3] Defendant notified the Court that the parties have agreed on the facts of these cases as stated in plaintiffs' Rule 56.1 Statements. (ECF No. 23 at 2.) The Court therefore accepts plaintiffs' Rule 56.1 Statements (ECF No. 17)—which are essentially identical in all three cases—as joint Rule 56.1 Statements.

(discussing defendant's letter to Gracci,[4] dated January 14, 2016), ECF No. 1, Ex. 1 at 3 (attaching defendant's letter to Andres, dated February 2, 2016).) These collection letters were the initial written communication defendant sent to plaintiffs concerning these debts. (ECF No. 17 at 2.)

The upper right-hand corner of each letter includes the following recipient-specific text:

> Re: SAMARITAN EMERGENCY MED SVCS-ER
> Patient name: CYNTHIA WHITE
> Service Date: 10/19/14

(ECF No. 1, Ex. 1 at 1.)

> Re: NSLIJ HEALTH SYS-SOUTHSIDE
> Patient name: RYAN THOMAS SHIELDS[5]
> Service Date: 01/26/14

(*Shields*, ECF No. 1, Ex. 1 at 1.)

> Re: MSK PHYSICIANS
> Patient name: JOSEPHINE GRACCHI[6]
> Service Date: 02/04/14

(*Gracci*, ECF No. 1, Ex. 1 at 1.)

> Re: MERCY MEDICAL CENTER
> Patient name: BERNABE ANDRES
> Service Date: 06/25/15

(*Gracci*, ECF No. 1, Ex. 1 at 3.)

The collection notices also include the "Balance Due," "PCB #," and "Client Acct #" specific to each recipient in another box at the top of the letter. (ECF No. 1, Ex. 1 at 1.)

The PCB and client account numbers are partially redacted. (*Id.*) Below this text, the collection letters provide defendant's information, including its name (Professional Claims Bureau, Inc.), contact information, and a computer icon accompanied by the message "Pay Online 24/7/365," below which defendant provides the website address "www.paypcb.com." (*Id.*)

The body of the letter contains the following message:

> IMPORTANT ACCOUNT INFORMATION
>
> The above referenced account has been referred to our offices for collection.
>
> Our professional account representatives are available to help you resolve this situation in a way that is acceptable to both you and our client.
>
> There is a good chance that this balance represents a balance after insurance or a balance that your insurance carrier has denied for some reason.
>
> For your convenience you may access our website (24 hrs/7 days) to pay your bill by check or credit card.
>         www.paypcb.com
>
> Additionally, feel free to mail your check, money order or credit card information along with the payment stub below.

---

[4] *See infra* note 8 (discussing the two collection letters at issue in Gracci).

[5] As indicated in the lower left-hand corner of the debt collection notice, plaintiff Matthew Shields received this collection letter requesting payment for services performed for patient Ryan Thomas Shields. (*Shields*, ECF No. 1, Ex. 1 at 1.) On the other letters, plaintiffs' names appear in both the lower left-hand and upper right-hand corners, next to "Patient name."

[6] Plaintiff's name is spelled "Gracchi" where it appears in both the lower left-hand and upper right-hand corners of the collection notice.

3

> *Whatever you do, please do not choose to ignore this outstanding debt.*
>
> This is an attempt to collect a debt. Any information obtained will be used for that purpose.

(*Id.*)  In slightly smaller font underneath this message, the letter states:

> If you request of this office in writing . . . this office will provide you with the name and address of the original creditor, if different from the current creditor.

(*Id.*)

The bottom portion of the collection letter is a detachable payment slip, with spaces for recipients to provide their credit card information and the "Amount Paid." (*Id.*) The payment slip contains some of the same information as appears at the top of the letter: the partially redacted account number, patient name, and balance due. (*Id.*) The slip also includes a "Statement Date," which the parties refer to as the date of the collection letter. (*Id.*) In smaller font, the top of the payment slip reads: "To ensure proper credit to your account, detach this section and return with your payment." (*Id.*)

The payment slip portion of each letter also includes that plaintiff's mailing address, Professional Claims Bureau's mailing address, and a return address for "pcb." (*Id.*) The payment slip includes, in smaller font: "Please note your credit card statement will reflect a charge from Professional Claims Bureau, Inc." (*Id.*)

2. Defendant's Collection Letters Challenged in Prior Actions

As discussed *infra*, the courts ruling in *Diaz v. Professional Claims Bureau, Inc.* and *McGinty v. Professional Claims Bureau, Inc.* granted summary judgment to plaintiffs alleging that defendant's form collection letters violated §§ 1692g(a)(2) and 1692e of the FDCPA. *Diaz*, No. 16-cv-2184 (ADS)(SIL) (E.D.N.Y. Nov. 27, 2017), ECF No. 37 (hereinafter, "*Diaz*" or "*Diaz* Opinion") at 1-2; *McGinty*, No. 15-cv-4356 (SJF)(ARL) (E.D.N.Y. Jan. 2, 2018), ECF No. 42 (hereinafter, "*McGinty*" or "*McGinty* Opinion") at 1-2.[7] One of the two collection letters at issue in *Diaz*[8] and all of the letters at issue in *McGinty* were essentially identical to the letters plaintiffs in this case received. The only differences among the letters were the recipient-specific statements, discussed *supra*, which included information identifying the recipient and the debt that defendant sought to collect through that letter (the name of the institution following "Re:" in the top box, patient name, balance due, PCB and client account numbers, and service and statement dates). (*See supra*; *Diaz* Opinion at 3; *McGinty* Opinion at 2-4; ECF No. 18, Exs. 1, 2.)

B. Procedural History

Plaintiffs filed their complaints against defendant on the following dates: White filed on December 17, 2015 (ECF No. 1); Shields filed his original complaint on June 17, 2016,

---

[7] The court issued a combined decision in *McGinty*, *Eastby v. Professional Claims Bureau, Inc.*, No. 15-cv-7183 (SJF)(GRB) (E.D.N.Y.), and *Barbero v. Professional Claims Bureau, Inc.*, No. 16-cv-3339 (SJF)(AYS) (E.D.N.Y.).

[8] The *Diaz* opinion involved two collection letters, one sent to each plaintiff in the case. For the purposes of this opinion, however, this Court need not discuss the letter in *Diaz* addressed to co-plaintiff Andres, which differed from the form collection letters at issue here. *Diaz*, ECF No. 37 at 5. When referring to the *Diaz* letter in this opinion, this Court is discussing the letter that co-plaintiff Diaz received, which was identical to the letters at issue in this case in all relevant respects, *id.* at 3, as discussed *infra*.

and his amended complaint on September 8, 2016 (*Shields*, ECF Nos. 1, 10); and Gracci and Andres filed on January 18, 2017 (*Gracci*, ECF No. 1). Defendant filed its answer in *White* on February 3, 2016 (ECF No. 6); in *Shields* on September 16, 2016 (*Shields*, ECF No. 11); and in *Gracci* on February 22, 2017 (*Gracci*, ECF No. 5).

On March 29, 2017, White filed a letter requesting permission to move for summary judgment. (ECF No. 13.) Plaintiffs filed the same letters in *Shields* and *Gracci* on April 20, 2017. (*Shields*, ECF No. 17; *Gracci*, ECF No. 10.) The Court held a pre-motion conference in *White* on April 3, 2017 (ECF No. 14), and in *Shields* and *Gracci* on May 2, 2017 (*Shields*, ECF No. 20; *Gracci*, ECF No. 14).

Plaintiffs filed their motions for summary judgment in the three cases on May 24, 2017. (ECF Nos. 16-19; *Shields*, ECF Nos. 22-25; *Gracci*, ECF Nos. 16-19.) Defendant submitted its oppositions on August 14, 2017 (ECF No. 23; *Shields*, ECF No. 28; *Gracci*, ECF No. 22), and plaintiffs replied on August 29, 2017 (ECF No. 24; *Shields*, ECF No. 29; *Gracci*, ECF No. 23). The Court held a joint oral argument in the three cases on September 27, 2017. (ECF No. 29; *Shields*, ECF No. 34; *Gracci*, ECF No. 28.)

On September 29, 2017, defendant filed a notice of supplemental authority in *Shields* and *Gracci*, bringing the recent decision in *Hernandez v. Prof'l Claims Bureau, Inc.*, No. 16 Civ. 6849 (PGG), 2017 U.S. Dist. LEXIS 193819 (S.D.N.Y. Sept. 23, 2017), to the Court's attention. (*Shields*, ECF No. 35; *Gracci*, ECF No. 29.)[9] Plaintiffs in *Shields* and *Gracci* filed replies in opposition to this letter the same day. (*Shields*, ECF No. 36; *Gracci*, ECF No. 30.) Plaintiffs also filed their own notices of supplemental authority: plaintiffs filed a letter regarding the decision in *Diaz* on November 27, 2017 (ECF No. 30; *Shields*, ECF No. 37; *Gracci*, ECF No. 31), and another letter regarding the decision in *McGinty* on January 10, 2018 (ECF No. 31; *Shields*, ECF No. 38; *Gracci*, ECF No. 32).

The Court has fully considered the parties' arguments and submissions.

II. STANDARD OF REVIEW

Pursuant to Federal Rule of Civil Procedure 56(a), a court may grant a motion for summary judgment only if "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see also Gonzalez v. City of Schenectady*, 728 F.3d 149, 154 (2d Cir. 2013). The moving party bears the burden of showing that he is entitled to summary judgment. *See Huminski v. Corsones*, 396 F.3d 53, 69 (2d Cir. 2005).

> A party asserting that a fact cannot be or is genuinely disputed must support the assertion by: (A) citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials; or (B) showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact.

---

[9] Defendant did not file a letter notifying the Court of this supplemental authority in *White*.

5

Fed. R. Civ. P. 56(c)(1). The court "is not to weigh the evidence but is instead required to view the evidence in the light most favorable to the party opposing summary judgment, to draw all reasonable inferences in favor of that party, and to eschew credibility assessments." *Amnesty Am. v. Town of W. Hartford*, 361 F.3d 113, 122 (2d Cir. 2004) (quoting *Weyant v. Okst*, 101 F.3d 845, 854 (2d Cir. 1996)); *see also Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986) (summary judgment is unwarranted if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party").

Once the moving party has met its burden, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . . [T]he nonmoving party must come forward with specific facts showing that there is a *genuine issue for trial*." *Caldarola v. Calabrese*, 298 F.3d 156, 160 (2d Cir. 2002) (alteration in original) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586-87 (1986)). As the Supreme Court stated in *Anderson*, "[i]f the evidence is merely colorable, or is not significantly probative, summary judgment may be granted." 477 U.S. at 249-50 (citations omitted). Indeed, "the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment." *Id.* at 247-48. Thus, the nonmoving party may not rest upon mere conclusory allegations or denials, but must set forth "concrete particulars" showing that a trial is needed. *R.G. Grp., Inc. v. Horn & Hardart Co.*, 751 F.2d 69, 77 (2d Cir. 1984) (quoting *SEC v. Research Automation Corp.*, 585 F.2d 31, 33 (2d Cir. 1978)). Accordingly, it is insufficient for a party opposing summary judgment "merely to assert a conclusion without supplying supporting arguments or facts." *BellSouth Telecomms., Inc. v. W.R. Grace & Co.*, 77 F.3d 603, 615 (2d Cir. 1996) (quoting *Research Automation Corp.*, 585 F.2d at 33).

III. DISCUSSION

Plaintiffs move for summary judgment on Claims One and Two of their complaints. Specifically, plaintiffs argue that: (1) defendant's form collection letters are deficient under the FDCPA, and (2) plaintiffs should succeed because courts in this district have already found defendant's form collection letters to be deficient, and defendant is therefore collaterally estopped from relitigating these issues.

A. Collateral Estoppel

As a threshold matter, for the reasons discussed below, this Court finds that defendant is collaterally estopped from relitigating the question of whether its form collection letters violate the FDCPA in light of the rulings in *Diaz* and *McGinty*.

1. Applicable Law

A court may conclude that the doctrine of collateral estoppel applies to a claim at the summary judgment stage. *Swiatkowski v. Citibank*, 745 F. Supp. 2d 150, 168 (E.D.N.Y. 2010), *aff'd*, 446 F. App'x 360 (2d Cir. 2011). "[C]ollateral estoppel . . . means simply that when an issue of ultimate fact has once been determined by a valid and final judgment, that issue cannot again be litigated between the same parties in any future lawsuit." *Leather v. Eyck*, 180 F.3d 420, 424 (2d Cir. 1999) (quoting *Schiro v. Farley*, 510 U.S. 222, 232 (1994)). "Collateral estoppel, like the related doctrine of res judicata, has the dual purpose of protecting litigants from the burden of relitigating an identical issue with the same party or his privy and of promoting judicial economy by preventing needless litigation." *Parklane Hosiery Co. v. Shore*, 439 U.S. 322, 326 (1979) (footnote omitted). The Second Circuit has established

6

the following four-part test for collateral estoppel to apply:

> (1) the issues of both proceedings must be identical, (2) the relevant issues were actually litigated and decided in the prior proceeding, (3) there must have been "full and fair opportunity" for the litigation of the issues in the prior proceeding, and (4) the issues were necessary to support a valid and final judgment on the merits.

*Cent. Hudson Gas & Elec. Corp. v. Empresa Naviera Santa S.A.*, 56 F.3d 359, 368 (2d Cir. 1995) (citing *Gelb v. Royal Globe Ins. Co.*, 798 F.2d 38, 44 (2d Cir. 1986)). "The party seeking the benefit of collateral estoppel bears the burden of proving the identity of the issues, while the party challenging its application bears the burden of showing that he or she did not have a full and fair opportunity to adjudicate the claims involving those issues." *Khandhar v. Elfenbein*, 943 F.2d 244, 247 (2d Cir. 1991) (citing *Kaufman v. Eli Lilly & Co.*, 65 N.Y.2d 449, 456 (1985)).

Although collateral estoppel requires identity of issues, it does not require mutuality of parties. *See Parklane*, 439 U.S. at 326-27. Under the mutuality doctrine, a party was barred from using a prior judgment for estoppel unless both parties were bound by that prior judgment. *Id.* The Supreme Court has abandoned the mutuality requirement for collateral estoppel,[10] and has ruled that a plaintiff can use "offensive collateral estoppel" to "estop a defendant from relitigating the issues which the defendant previously litigated and lost against another plaintiff." *Id.* at 329-33.

2. Analysis

Here, as the Supreme Court established in *Parklane*, plaintiffs can use offensive collateral estoppel to prevent defendant from relitigating issues that were decided adversely to defendant in a prior action (even though plaintiffs were not parties to those proceedings), 439 U.S. at 333, so long as they can satisfy the four-part test for collateral estoppel. Plaintiffs argue that, because courts in this district have already found that defendant's form collection letters—which they allege were essentially identical to the letters they received—violate the same FDCPA provisions plaintiffs raise, this Court should find defendant collaterally estopped from relitigating these issues.

The Court agrees with plaintiffs that (1) the issues of whether defendant's letters in the instant cases violate §§ 1692g(a)(2) and 1692e of FDCPA are identical to the issues raised in *Diaz* and *McGinty*, (2) these issues were actually litigated and decided in those proceedings, (3) defendant had a "full and fair opportunity" to litigate these issues, and (4) these issues were necessary to support a valid and final judgment on the merits in both *Diaz* and *McGinty*.

Like plaintiffs here, plaintiffs in *Diaz*[11] and *McGinty* argued that Professional Claims Bureau's form letters failed to identify the owners of plaintiffs' debts, in violation of §§ 1692g(a)(2) and 1692e of FDCPA. *Diaz* Opinion at 11-12, 16; *McGinty* Opinion at 8.

---

[10] *See United States v. Mendoza*, 464 U.S. 154, 158 (1984); *see also Amadasu v. Bronx Lebanon Hosp. Ctr.*, No. 03 Civ. 6450 (LAK) (AJP), 2005 WL 121746, at *8 (S.D.N.Y. Jan. 21, 2005) ("[T]he doctrine of collateral estoppel does not require that the same parties are named in the earlier action in order to apply to the instant action.").

[11] As discussed *supra* in note 8, the Court discusses only the claims pertaining to Diaz's allegedly identical form letter, without addressing the *Diaz* opinion as it relates to co-plaintiff Andres's different form collection letter.

In *Diaz*, Diaz claimed that the collection letter he received "failed to identify any entity using the label 'creditor,' 'current creditor,' 'original creditor,' 'or creditor to whom the debt is owed.'" *Diaz* Opinion at 12. In *McGinty*, the court stated that it was "presented with the same, deficient PCB Collection Letters" as were at issue in *Diaz*. *McGinty* Opinion at 15. The court next described all of the letters (including the *Diaz* letter as well as those in the case before it) as follows:

> Each letter has a single reference, in the top, right-hand corner, to an entity for which, other than the preceding "Re:", there are no identifiers therewith, *e.g.*, "creditor," "current creditor," "original creditor," or "creditor to whom this debt is owned [sic]." Nor is there anything in the Collection Letters which would connect the referenced entity to PCB or identify its relationship to PCB, if any, *e.g.*, "PCB's client, [named entity]." Without[] this "something more", the Collection Letters do not state the required § 1692g(a)(2) information clearly enough that the least sophisticated consumer is likely to understand it.

*Id.* Based on this Court's review of the form letters in *Diaz* and *McGinty* (as displayed in the exhibits and described in the opinions in those cases), this Court agrees with the *McGinty* court's determination that the letters in those cases were essentially identical and presented the same issues. The court in *McGinty* concluded its analysis by stating that "substantially for the same reasons articulated by Judge Spatt in his *Diaz* Decision, as a matter of law, the Plaintiffs are entitled to summary judgment in their favor as to their § 1692g(a)(2) causes of action." *McGinty* Opinion at 16.

The court in *Diaz* granted summary judgment on the § 1692e claim for the same reasons provided in its § 1692g(a)(2) analysis. *Diaz* Opinion at 16. The *McGinty* court agreed with the *Diaz* court's decision and found that, in addition to violating § 1692e by failing to sufficiently identify the current creditors, the letters could also be found to be "false, deceptive, or misleading" for the following reasons:

> (1) other than the numerous times PCB is mentioned in the Collection Letters, including several directions to pay it, as to each Letter, there is one, ambiguous reference to another entity; and (2) in each Collection Letter, PCB's opaque reference to its "client", without more, does not elucidate a connection, if any, between itself and the vaguely referenced entity. Moreover, since PCB did not identify the named entities as the Plaintiffs' current creditors, that failure is sufficient to satisfy the materiality requirement, if there is one . . . .

*McGinty* Opinion at 17-18.

As discussed *supra*, aside from the recipient-specific information they contain, the form letters in the instant cases are identical to the letters discussed in *Diaz* and *McGinty*, and are also, therefore, deficient in the ways identified by the courts ruling in those cases. This Court, therefore, finds the first requirement for collateral estoppel satisfied: the issues in those cases and the instant cases are the same. Further, as those courts ruled on the parties' summary judgment motions after reviewing the parties' briefs, *Diaz*, ECF Nos. 25, 28-37; *McGinty*, ECF Nos. 24, 30-42, (1) these issues were actually litigated and decided in those proceedings, (2) defendant had a "full and fair opportunity" to litigate, and (3) the issues were necessary to support the courts' valid

8

and final judgments on the merits in both cases, finding that defendant's form collection letters had violated §§ 1692g(a)(2) and 1692e.

The Court, therefore, concludes that defendant is collaterally estopped from relitigating the issue of the deficiency of the same form collection letter in the instant cases. Further, the Court has conducted an independent analysis of plaintiffs' FDCPA claims in these cases, and for the reasons discussed below, also determines that plaintiffs are entitled to summary judgment on their claims on the merits.

B. The FDCPA

Congress created the FDCPA to respond to the "use of abusive, deceptive, and unfair debt collection practices by many debt collectors." 15 U.S.C. § 1692(a); *see Greco v. Trauner, Cohen & Thomas, L.L.P.*, 412 F.3d 360, 363 (2d Cir. 2003). Finding that such practices "contribute to the number of personal bankruptcies, to marital instability, to the loss of jobs, and to invasions of individual privacy," the FDCPA aims "to eliminate abusive debt collection practices by debt collectors, to insure that those debt collectors who refrain from using abusive debt collection practices are not competitively disadvantaged, and to promote consistent State action to protect consumers against debt collection abuses." 15 U.S.C. §§ 1692(a), 1692(e).

1. Section 1692g(a)(2)

Section 1692g(a) sets forth the required disclosures for a debt collector's initial communication to a consumer. Specifically, the debt collector must include:

> (1) the amount of the debt; (2) the name of the creditor to whom the debt is owed; (3) a statement that the consumer may dispute the validity of the debt within thirty days after receipt of the initial communication, lest the debt be assumed valid by the debt collector; (4) a statement that if the consumer notifies the debt collector that the consumer is disputing the debt, the debt collector must provide verification of the debt; and (5) a statement that, if the consumer requests the name and address of the original creditor in writing within thirty days of receiving the initial communication, the debt collector must provide it.

15 U.S.C. § 1692g(a). The sole portion of this provision at issue in this case is § 1692g(a)(2), requiring debt collectors to include "the name of the creditor to whom the debt is owed." *Id.*

2. Section 1692e

Section 1692e provides that "[a] debt collector may not use any false, deceptive, or misleading representation or means in connection with the collection of any debt." 15 U.S.C. § 1692e. To determine whether a debt collector's communication violates § 1692e, courts apply an objective test based on the understanding of the "least sophisticated consumer." *Bentley v. Great Lakes Collection Bureau*, 6 F.3d 60, 62 (2d Cir. 1993); *see Clomon v. Jackson*, 988 F.2d 1314, 1318 (2d Cir. 1993); *Vu v. Diversified Collection Servs., Inc.*, 293 F.R.D. 343, 359 (E.D.N.Y. 2013). According to the Second Circuit, the "least sophisticated consumer" standard is "an objective analysis that seeks to protect the naive from abusive practices while simultaneously shielding debt collectors from liability for bizarre or idiosyncratic interpretations of debt collection letters." *Greco*, 412 F.3d at 363 (citations omitted). The Second Circuit has emphasized, however, that "even the least sophisticated consumer can be presumed to possess a rudimentary amount of information about the world and a willingness to read a

collection notice with some care." *Id.* (quoting *Clomon*, 988 F.2d at 1318-19).

A communication is considered false, deceptive, or misleading to the "least sophisticated consumer" if it is "open to more than one reasonable interpretation, at least one of which is inaccurate."[12] *Easterling v. Collecto, Inc.*, 692 F.3d 229, 233 (2d Cir. 2012).

3. Analysis

Plaintiffs argue that defendant's form collection letters violated the FDCPA because of "certain deficiencies . . . concerning the identity of the owner of Plaintiff's debt," and that plaintiffs are therefore entitled to summary judgment. (ECF No. 19 at 1.)[13] As a threshold matter, the first two elements of an FDCPA claim are not disputed: the parties agree that plaintiffs are "consumers" as defined by § 1692a(3), and that defendant is a "debt collector" as defined by § 1692a(6). (ECF No. 17 at 1.) At issue in this case is the last element required for plaintiffs' claims: whether defendant has violated §§ 1692g(a)(2) and 1692e of the FDCPA.

a. Section 1692g(a)(2)

Plaintiffs argue that defendant failed to include the name of the creditor to whom the debt was owed in their collection letters, as required under § 1692g(a)(2). While "the Second Circuit appears not to have directly addressed how clearly a debt collection notice must identify the name of the creditor," numerous decisions in this circuit have found collection letters to be in violation of § 1692g(a)(2) for, among other reasons, failing to make the creditor's identity explicit, or identifying a creditor only once. *See, e.g.*, *Datiz v. Int'l Recovery Assocs., Inc.*, No. 15-cv-3549 (ADS)(AKT), 2016 WL 4148330, at *8-11 (E.D.N.Y. Aug. 4, 2016) (rejecting defendant's argument that its letter "clearly implie[d] that [the medical institution] [wa]s the Plaintiff's creditor," and therefore denying defendant's motion to dismiss because "the fact that the caption [of the] . . . Letter lists [the medical institution] is not, without more explanation, sufficient to satisfy Section 1692g(a)(2) because it does not identify the Hospital as the Plaintiff's current creditor"); *Sparkman v. Zwicker & Assocs., P.C.*, 374 F. Supp. 2d 293, 300-01 (E.D.N.Y. 2005).

As plaintiffs argue, defendant's letter "fails to identify any entity as 'account owner,' 'creditor,' 'current creditor,' 'original creditor,' or 'creditor to whom the debt is owed.'" (ECF No. 19 at 5.) Plaintiffs also highlight that the letters here, as the court noted in *McGinty*, inform recipients that

---

[12] District court decisions in this circuit have incorporated a materiality prong into this analysis, *see, e.g.*, *Vu*, 293 F.R.D. at 360 (citing *Fritz v. Resurgent Capital Servs., L.P.*, 955 F. Supp. 2d 163, 170-71 (E.D.N.Y. 2013)), relying on the Second Circuit's apparent approval of the materiality requirement in an unpublished opinion, *Gabriele v. Am. Home Mortg. Servicing, Inc.*, 503 F. App'x 89, 94 (2d Cir. 2012). Pursuant to *Gabriele*, "communications and practices that could mislead a putative-debtor as to the nature and legal status of the underlying debt, or that could impede a consumer's ability to respond to or dispute collection," are material misrepresentations that violate the FDCPA. 503 F. App'x at 94. This Court, however, need not decide whether to incorporate the materiality requirement in this case because, even assuming such a requirement exists, this Court concludes that failing to name the creditor is misleading in a material way because it could impede a consumer's ability to respond to, or dispute, collection. Thus, any materiality requirement is met in this case.

[13] Plaintiffs in these three cases submitted briefs that were identical in all but the three-line section in each brief quoting the recipient-specific information in the upper right-hand corners of plaintiffs' form collection letters. (*See supra*; ECF No. 19 at 5-6; *Shields*, ECF No. 25 at 5-6; *Gracci*, ECF No. 19 at 5-6.) The Court, therefore, continues to provide a single citation to the *White* docket, unless otherwise indicated.

"[t]he above referenced account has been referred to our offices for collection" (ECF No. 1, Ex. 1 at 1), but "fail to make clear on whose behalf [the debt collector] was acting when it sent the Collection Letters," *McGinty* Opinion at 4. As was true of the *Diaz* and *McGinty* letters, here, defendant's letters to plaintiffs each contain only "one, ambiguous reference" to the creditor (the medical institution that initially performed the service for which plaintiffs owed a debt), *McGinty* Opinion at 17-18: the single reference is in the upper right-hand corner of the letters, where the medical institution's name follows the word "Re:" (ECF No. 1, Ex. 1 at 1). After the "Re:" line, nothing else in each letter directs the recipient back to the creditor's name. The body of each letter refers to the institution as defendant's "client," but does not clarify further if the recipient will satisfy his or her debt to that client by submitting the payment slip in the collection notice. (ECF No. 1, Ex. 1 at 1.) For these reasons, the Court agrees with plaintiffs, and finds that these letters would mislead recipients as to whom they owe a debt, possibly even to believe that they owe a debt to defendant.

Defendant asks the Court to consider the recent Southern District of New York ruling in its favor in *Hernandez v. Professional Claims Bureau, Inc.* (*Shields*, ECF No. 35; *Gracci*, ECF No. 29.) The letter at issue in *Hernandez* also resembles the letters in *Diaz*, *McGinty*, and the instant cases, aside from one critical difference: the payment slip in Hernandez's letter was addressed to the medical institution that had performed the service for which she owed a debt, *Hernandez*, 2017 U.S. Dist. LEXIS 193819, at *12-13, rather than to defendant.

Distinguishing *McGinty*, the *Hernandez* court found that plaintiff had not demonstrated, as a matter of law, that the letter insufficiently identified the name of the creditor seeking collection. *Id.* at *11-13.

The court first explained that, in other cases in which courts had found letters to be deficient under § 1692g(a)(2)—including *McGinty*—the creditor was "listed only once in the subject line of a collection notice, and there [wa]s no reference to the term 'creditor.'" *Id.* at *10-11. Conversely, other courts had determined that collection letters that repeated the creditor's name, even where they failed to use the term "creditor," sufficiently identified the creditor for the purposes of the FDCPA. *Id.* at *11-12. After highlighting that the letter before it included more than a single reference to the creditor, the *Hernandez* decision discussed the significance it assigned to the fact that defendant included the creditor's name on the payment slip. *Id.* at *12-13. The court specifically distinguished *McGinty* (in which *defendant*'s name appeared on the payment slip) on this basis, and explained that "[t]he inclusion of the creditor's name on the payment slip – considered together with the 'Patient Name' field, the suggestion that the debt is a co-pay, and the listing of a medical facility – is sufficient for this court to conclude . . . that [the medical institution] is identified as the current creditor." *Id.* The *Hernandez* decision discussed the *McGinty* case as rightly decided, and this Court concurs. Additionally, the Court notes that the payment slips in plaintiffs' letters, unlike in the *Hernandez* letter (1) are addressed to defendant rather than to the medical institutions, and (2) include a note stating that "[the recipient's] credit card statement will reflect a charge from Professional Claims Bureau, Inc." (ECF No. 1, Ex. 1 at 1).

Viewing the same set of relevant facts as were present in *McGinty* and *Diaz*, this Court finds the analysis in those decisions to be persuasive. Here, based on the language in defendant's letters alone, this Court finds that it would be *at best* unclear to the "least sophisticated consumer" which entity owned plaintiffs' debts. In fact, the Court believes it

11

is equally, if not more likely, that recipients would read these collection notices to suggest that the creditor they would be paying was defendant.

### b. Section 1692e

In addition to finding that defendant insufficiently identified the current creditor in its form collection letters under § 1692g(a)(2), the Court also agrees with plaintiffs and the courts in the prior proceedings against defendant that its letters violate § 1692e. Plaintiffs argue that defendant's letters are "open to more than one reasonable interpretation as to the owner of the debt," and are therefore deceptive as a matter of law under § 1692e. (ECF No. 19 at 7.) The Court agrees with plaintiffs for the reasons stated *supra*. In particular, the least sophisticated consumer would find the language of the letter, as it relates to the identity of the creditor, to be confusing and misleading. The Court, therefore, finds defendant's form collection letters to be deceptive as a matter of law under § 1692e.

## IV. Conclusion

For the foregoing reasons, the Court grants plaintiffs' motions for summary judgment on Claims One and Two of their complaints.

SO ORDERED.



JOSEPH F. BIANCO
United States District Judge

Dated: February 22, 2018
Central Islip, NY

\* \* \*

Plaintiff is represented by Craig B. Sanders, David M. Barshay, and Jonathan Mark Cader of Sanders Law, PLLC, 100 Garden City Plaza, Suite 500, Garden City, New York 11530. Defendant is represented by Arthur Sanders of Barron & Newburger, P.C., 30 South Main Street, New City, New York 10956.